❏ Original          ❏ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Information about Target Cellphones<br>1, 2, 3, 4, 5, and 6, serviced by AT&T,<br>as further described in Attachment A | )<br>)<br>)<br>)<br>)<br>)  Case No. 25-900M(NJ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before   5/26/2025 _____ *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to   Honorable Nancy Jospeh _____ .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)*   ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:   5/13/2025 @ 10:41 a.m. _____

_____
*Judge's signature*

City and state:   Milwaukee, Wisconsin _____

Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**Property to Be Searched**
**Matter No. 2022R00208**

This warrant applies to records and information associated with the cellular devices assigned call numbers **773-587-1696** ("**Target Cell Phone 1**" or "**TCP-1**"), **708-654-9277** ("**Target Cell Phone 2**" or "**TCP-2**"), **779-240-6814** ("**Target Cell Phone 3**" or "**TCP-3**"), **847-848-7069** ("**Target Cell Phone 4**" or "**TCP-4**"), **847-282-2791** ("**Target Cell Phone 5**" or "**TCP-5**"), and **708-465-6126** ("**Target Cell Phone 6**" or "**TCP-6**"), that is in the custody or control of AT&T (the "Service Provider"), a wireless communications service provider that is headquartered at 11760 U.S. Highway 1, North Palm Beach, FL 33408.

**Particular Things to be Seized**
**Matter No. 2022R00208**

**I.**     **Information to be Disclosed by the Service Provider**

For the referenced time periods, the Service Provider is required to disclose the following records and other information, if available, to the United States:

- **773-587-1696 (TCP-1)**, March 27, 2023, to November 29, 2023
- **708-654-9277 (TCP-2)**, June 22, 2022, to August 11, 2022
- **779-240-6814 (TCP-3)**, August 11, 2022, to November 29, 2023
- **847-848-7069 (TCP-4)**, June 18, 2023, to July 27, 2023
- **847-282-2791 (TCP-5)**, July 27, 2023, to November 29, 2023
- **708-465-6126 (TCP-6)**, October 25, 2022, to November 29, 2023

**A.**     **Subscriber Information and Call Detail Records:**     The following information about the customers or subscribers of the account listed Attachment A:

1.     Subscriber/customer names (including user names and screen names);

2.     Subscriber/customer addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

3.     Local and long-distance call detail and tolls records for the Account;

4.     Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

5.     Length of service (including start date) and types of service utilized;

6.     Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity

2

Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI"));

7.     Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

8.     Means and source of payment for such service (including any credit card or bank account number) and billing records.

**B.     Cell-Site/Tower Records:**  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the account listed in Attachment A, including:

1.     Records of user activity for each connection made to or from the Target Phone, including log files; text messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination Internet Protocol addresses (IPV6 data records);

2.     Information about each communication sent or received by the Target Phone, including the date and time of the communication, the method of communication, and the source and destination of the communication (such as the source and destination telephone numbers, email addresses, and IP addresses); and

3.     All data regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received;

4.     All historical GPS or other precision location information associated with the Account listed in Attachment A, including Per Call Measurement Data (PCMD), Range to Tower/Real-Time Tool (RTT) data, NELOS records, and Timing Advance Data (TrueCall)).

**The Service Provider is hereby ordered to disclose the above information to the government within FOURTEEN (14) DAYS of issuance of this warrant.**

3

## II.     Information to be Seized by the Government

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 511 (altering or removing vehicle identification numbers), 18 U.S.C. §§ 2312 and 2313 (transportation of stolen vehicles and sale or receipt of stolen vehicles), and 18 U.S.C. § 2321 (buying and selling motor vehicles with altered VINs involving into DIAUNTE D. SHIELDS (DOB: 02/18/1995), JA LEAN LITTLE (DOB: 09/18/2001), TASHAWN BROWN SMITH (DOB: 01/28/1997), BRIAN BELL (DOB: 12/06/1979), GLENN LARSEN (DOB: 02/29/1972), and/or any other known or unknown co-conspirators, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

    (a) Location information associated with the co-conspirators, call and message records associated with the co-conspirators, and records related to stolen vehicles, vehicle repair shops, VINs and titles, the transportation of vehicles, money transfers**;**

    (b) Evidence indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crimes under investigation and to the account owner;

    (c) Evidence indicating the account owner's state of mind as it relates to the crimes under investigation;

    (d) The identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s); and

4

(e) The identity of the person(s) who communicated with the account user about matters relating to the crimes described herein.

This warrant authorizes a review of electronically stored information, communications, other records, and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. 25-900M(NJ) |
| Information about Target Cellphones 1, 2, 3, 4, 5, and 6, serviced by AT&T, as further described in Attachment A | ) ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC §§ 371, 511, 2312, 2313, and 2321 | Conspiracy, Altering or removing vehicle identification numbers, Transportation of stolen vehicles, Sale or receipt of stolen vehicles, and Buying and selling motor vehicles with altered VINs |

The application is based on these facts:

See Affidavit

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

FBI SA Shane Hoffmann
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date: 5/13/2025

_____
*Judge's signature*

City and state: Milwaukee, Wisconsin

Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF AN**
**<u>APPLICATION FOR A SEARCH WARRANT</u>**

I, Shane Hoffmann, being first duly sworn, hereby depose and state as follows:

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the location of the cellular telephones assigned call numbers **773-587-1696** ("**Target Cell Phone 1**" or "**TCP-1**"), **708-654-9277** ("**Target Cell Phone 2**" or "**TCP-2**"), **779-240-6814** ("**Target Cell Phone 3**" or "**TCP-3**"), **847-848-7069** ("**Target Cell Phone 4**" or "**TCP-4**"), **847-282-2791** ("**Target Cell Phone 5**" or "**TCP-5**"), and **708-465-6126** ("**Target Cell Phone 6**" or "**TCP-6**"). Collectively, **TCP-1** through **TCP-6** will be referred to herein as the "**Target Cell Phones.**" The **Target Cell Phones'** service provider is AT&T (the "Service Provider"), a wireless communications service provider that is headquartered at 11760 U.S. Highway 1, North Palm Beach, FL 33408. The listed subscribers and/or users of the **Target Cell Phones** are described herein, and the location information to be seized is described herein and in Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since September 2015. I am currently assigned to the Milwaukee Division – Madison Resident Agency. Since becoming a Special Agent, I have received specialized training in conducting criminal investigations, and my responsibilities include conducting investigations of alleged criminal violations of federal statutes and laws. I have participated in the execution of search warrants in various judicial districts,

including the recovery of records, contraband, and other types of property. I have received training in computer technology, and I have on numerous occasions reviewed the content of targets' phones and computers, email accounts, and social media accounts for evidence of criminal activity.

3.     The United States, including the FBI, is conducting a criminal investigation into DIAUNTE D. SHIELDS (DOB: 02/18/1995), JA LEAN LITTLE (DOB: 09/18/2001), TASHAWN BROWN SMITH (DOB: 01/28/1997), BRIAN BELL (DOB: 12/06/1979), GLENN LARSEN (DOB: 02/29/1972), and others known and unknown, regarding possible violations of 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 511 (altering or removing vehicle identification numbers),18 U.S.C. §§ 2312 and 2313 (transportation of stolen vehicles and sale or receipt of stolen vehicles), and 18 U.S.C. § 2321 (buying or selling motor vehicles with altered VINs).

4.     More specifically, the investigation has revealed a nationwide criminal enterprise involved in a variety of illicit activities.  The hubs of their conduct include Milwaukee, Wisconsin, Chicago, Illinois, and Atlanta, Georgia. Chief among the enterprise's activities is the theft and resale of high-end stolen automobiles including Dodge Ram TRXs, Dodge Challenger Hellcats, Cadillac Escalades, Chevrolet Corvettes, Jeep Trackhawks and SRTs, GMC Yukons, and others. The enterprise acquires the vehicles from a variety of sources, including stealing them from private properties, public parking lots including airports, rental car facilities, Turo rentals, dealerships, and

assembly plants. The vehicles are often stolen utilizing key reprogramming technology. Investigators have also learned that the enterprise utilizes GPS tracking technology to track vehicles targeted for theft. To date, investigators have linked hundreds of stolen vehicles to the group with a value exceeding $10 million dollars. Although the vehicles are often sold well below market value, the actors profit significantly from the resale of vehicles.

5. Law enforcement has identified DIAUNTE D. SHIELDS as a leader of the organization with activities dating back to at least 2019 and continuing through his arrest in Illinois on November 29, 2023. Throughout the years, numerous individuals have aided SHIELDS in his operation, including in the sale of stolen vehicles and/or interstate transport of vehicles. The investigation has revealed that SHIELDS has transported stolen vehicles either through the use of commercial transport companies, or via the use of "runners." Many of SHIELDS's runners have been identified as part of law enforcement's ongoing review of electronic evidence that was collected on November 29, 2023, during search warrants targeting SHIELDS. This warrant aims to collect precision location information on the **Target Cell Phones** which have been linked to associates of SHIELDS. The location information will be used to further corroborate the evidence of criminal activity of SHIELDS and his associates as exemplified below, as well as other related conduct.

6.     The investigation has attributed **TCP-1** to JA LEAN LITTLE, an associate of SHIELDS. The subscriber information for 773-587-1696 showed an activation period of March 27, 2023, through December 11, 2023, with the account in the name of "Ja Lean Little."  Evidence uncovered in the investigation to date, including text messages conversation, has revealed that LITTLE has assisted SHIELDS in the theft and subsequent transport of vehicles. A review of SHIELDS's iPhone that was collected pursuant to a warrant on or about November 29, 2023, shows communication with LITTLE spanning August 2, 2022, through November 25, 2023. LITTLE is listed in SHIELDS's as contact "Lil Jay." A review of additional iCloud accounts linked to SHIELDS shows communications between SHIELDS and LITTLE dating back to 2020.

7.     The investigation has attributed **TCP-2** and **TCP-3** to TASHAWN BROWN-SMITH, a supplier of stolen cars to SHIELDS. The subscriber information for **TCP-2** showed active dates from August 11, 2021, through August 11, 2022, with a subscriber name of "Tashawn Smith." The subscriber information for **TCP-3** showed a start date of August 11, 2022, with a subscriber name of "Tashawn Smith."  A review of SHIELDS's iPhone that was collected pursuant to a warrant on or about November 29, 2023, shows communication with BROWN-SMITH on **TCP-2** from June 22, 2022, through August 11, 2022, and on **TCP-3** from November 2, 2023, through November 27, 2023.  BROWN-SMITH is listed as contact "Man Man (Diamond Cuzo)" for **TCP-3** in SHIELDS's phone.

8.      The investigation has attributed **TCP-4** and **TCP-5** to BRIAN BELL, an associate of SHIELDS. The subscriber information for **TCP-4** shows a subscription period of February 28, 2020 through July 27, 2023, in the name of TGM Studios, Leslie Green, address 70 Seton Creek Drive, Oswego, Illinois.  The subscriber information for **TCP-5** shows a subscription start date of July 27, 2023, in the name of Leslie Green, address 70 Seton Creek Drive, Oswego, Illinois. Open source records show **TCP-4** and **TCP-5** associated with BELL. In addition,  BELL's Cash App records show a reference to **TCP-5**. A review of SHIELDS's iPhone that was collected pursuant to a warrant on or about November 29, 2023, shows communication with BELL on **TCP-4** and **TCP-5** spanning June 18, 2023, through November 26, 2023. A review of the conversations shows discussions regarding vehicle titles, vehicle stickers, and selling stolen vehicles to each other. BELL has a criminal history that includes charges and convictions associated with vehicle theft, identity theft, forgery, and securing writings by deception, among others.

9.      The investigation has attributed **TCP-6** to GLENN LARSEN, an associate of SHIELDS and owner of a mobile auto glass repair business in Illinois. The subscriber information for **TCP-6** shows a user of "Glenn Elite Auto Glass" with an active date of January 24, 2018. In addition, **TCP-6** was linked to LARSEN's Cash App account. A review of SHIELDS's iPhone that was collected pursuant to a warrant on or about November 29, 2023, shows communication with LARSEN spanning October 25, 2022, through November 23, 2023.  LARSEN is listed as contact "Bland (Window Guy Raq)."

5

A review of the text conversations between SHIELDS and LARSEN shows extensive conversation regarding vehicle titles, auto glass repair, and selling stolen cars to each other.

10.     This affidavit is based upon my personal knowledge, and upon information reported to me by other federal, state, and local law enforcement officers during their official duties, all of whom I believe to be truthful and reliable. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## PROBABLE CAUSE

11.     This investigation involves, among other crimes, the organized theft and resale of high-end motor vehicles. I know from my training and experience that there is a large amount of money associated with the theft and sale of high-end motor vehicles. I also know that high-end vehicles over the retail price of $50,000 have means of identifying the vehicle other than vehicle identification number (VIN) plates and stickers, such as: hidden VIN stamps, identifying parts numbers, etching on glass windows, and electronic data stored in the vehicle's Electronic Control Unit (ECU). Based on this investigation, which included the recovery of stolen vehicles associated with SHIELDS, I believe that

the auto theft ring with which SHIELDS and others are involved is replacing the stolen vehicles' VIN plates and VIN stickers but not changing the hidden identifying features.

12.     The following paragraphs portray the involvement of the **Target Cell Phones** with certain stolen vehicles.  The investigation has assigned consecutive vehicle numbers (e.g., VEH 001) to each identified vehicle.  These vehicle numbers will be used to identify each vehicle referenced in this affidavit.

*VEH 260 – Red 2023 Chevrolet Corvette with Manufactured*
*VIN 1G1YD2D33P5603005*

13.     In September 2023, SHIELDS had a known associate rent VEH 260 via Turo in Georgia. Based on my review of SHIELDS's cell phone text communications with others, I believe that on September 27, 2023, SHIELDS stole VEH 260 with the aid of an Optimus tracking device and a reprogrammed key. Assisted by JALEAN LITTLE, SHIELDS transported VEH 260 to Illinois and sold it to an individual in Wisconsin. SHIELDS kept the tracking device on VEH 260.  With the assistance of Chandor Smith and LITTLE, I believe SHIELDS stole VEH 260 a second time while it was still located in Wisconsin.  SHIELDS then coordinated a second sale of VEH 260 to a female in Florida via one of SHIELDS's associates in Georgia. VEH 260 was recovered in Florida in May 2025.  The approximate value of VEH 260 at the time of theft was $170,000.

14.     Per SHIELDS's phone, on September 29, 2023, LITTLE, utilizing **TCP-1,** sent SHIELDS an image of a fuel gauge showing 114 miles.  About 75 minutes later, SHIELDS sent an image to the initial purchaser of VEH 260 of an apparent red Corvette as viewed

7

from a vehicle following the Corvette. Data from Optimus tracking shows that the tracker that was associated with VEH 260 was traveling from Georgia to Illinois during this timeframe. Prior text messages had indicated that LITTLE was in Georgia with SHIELDS. Based on my training, experience, and knowledge obtained from the case, I believe that LITTLE was transporting VEH 260 from Georgia to Illinois and SHIELDS was following him in a second car.

15.     Per SHIELDS's phone, on October 1, 2023, SHIELDS arranged with the purchaser to have VEH 260 brought to Milwaukee and provided the address of 1236 S Barclay, Milwaukee, WI. Optimus tracking data confirmed that VEH 260 was at the referenced address at approximately 12:00 pm that day. At 1:40 pm, the tracking device was showing a location in the vicinity of 8572 N Granville Rd, Milwaukee, WI.

16.     Per SHIELDS's phone, on October 8, 2023, at approximately 6:00 pm, SHIELDS used a group chat to communicate with Chandor Smith and LITTLE (utilizing **TCP-1**) regarding a meeting location. At approximately 9:59 pm, Smith texted the group chat, "See if you can over pull it down," followed by, "Try taking out the ignition switch." Optimus tracking data shows that the tracker associated with VEH 260 began moving from 8572 N Granville Rd, Milwaukee, WI, at around 11:50 pm. On October 9, 2023, at approximately 1:40 am, the tracker was located in the vicinity of 737 W Washington Blvd, Chicago, Illinois, which I know to be a location utilized by SHIELDS to store stolen vehicles. Based on my training, experience, and knowledge obtained from the case, I

8

believe that SHIELDS instructed LITTLE and Smith to steal VEH 260 in Wisconsin and transport it to Illinois.

17. Per SHIELDS's phone, on October 9, 2023, Jamone Hegwood (the individual who arranged the initial sale of VEH 260) contacted SHIELDS and said that the Corvette buyer wanted to talk to SHIELDS because the buyer believed that SHIELDS stole the car from him. SHIELDS denied stealing the car back.

18. Per SHIELDS's phone, on October 9, 2023, SHIELDS arranged with his associate, Deamonte Lee, to drive VEH 260 to Atlanta the following morning. SHIELDS continued to converse with a buyer in Georgia providing him updates on VEH 260.

19. Per SHIELDS's phone, on October 10, 2023, SHIELDS provided instructions to Lee, regarding driving VEH 260 to Georgia and where to drop it off. Optimus tracking data showed VEH 260 traveling from Illinois to Georgia. SHIELDS then arranged a flight back to Chicago for Lee.

20. Precision location information for **TCP-1** would further corroborate the movements of JALEAN LITTLE in his assistance of SHIELDS and interstate transport of VEH 260.

### *VEH 018 – Orange 2021 Dodge Charger Scat Pack*
### *VIN 2C3CDXGJ0MH639459*

21. Per Forest Park Police Department Report 2202031, on July 7, 2022, at approximately 3:05 am, VEH 018 was stolen in Forest Park, Illinois. That same day,

SHIELDS agreed to purchase VEH 018 from TASHAWN BROWN-SMITH. Text messages indicate that BROWN SMITH transported VEH 018 from Illinois to Milwaukee, Wisconsin. SHIELDS coordinated with known associates to obtain fraudulent stickers and a fraudulent title for VEH 018. In August 2022, VEH 018 was recovered in Milwaukee, Wisconsin, displaying a fraudulent VIN.

22.     Specifically, per SHIELDS' phone, on July 7, 2022, at approximately 2:04 pm, BROWN-SMITH, utilizing **TCP-2**, texted multiple images of an orange Dodge Charger that resembled VEH 018. The capture time on the images was 5:03 am. SHIELDS inquired as to the price, to which BROWN-SMITH replied, "I need it gone today need gas money for Atl 3500." SHIELDS responded by offering "2500." At approximately 3:34 pm, BROWN-SMITH utilized **TCP-2** to text, "Can they come get it today for 3k……"

23.     Per SHIELDS's phone, on July 7, 2022, at approximately 10:32 pm, BROWN-SMITH, utilizing **TCP-2**, texted, "Getting gas now then on are way." SHIELDS provided the address of 6005 W Appleton, which resolves to a restaurant in Milwaukee. At approximately 12:29 am on July 8, 2022, SHIELDS asked for an arrival time and BROWN-SMITH replied, "40 mins." At approximately 1:14 am, BROWN-SMITH texted, "Got to Hurry to hot over here."

24.     Per SHIELDS's phone, over the following days SHIELDS collaborated with known associates to obtain fraudulent vehicle stickers and a fraudulent title. VEH 018 was registered in Wisconsin using a fraudulent VIN on August 4, 2022. VEH 018 was

recovered in Milwaukee, Wisconsin, on August 29, 2023. The manufactured VIN was discovered upon inspection.

25.      Precision location information for **TCP-2** would further corroborate the movements of TASHAWN BROWN-SMITH and his involvement in the theft and interstate transport of VEH 018.

<em><u>VEH 082 – White 2019 Dodge Durango R/T</u></em><br><em><u>VIN 1C4SDHCT1KC651138</u></em>

26.      Per Chicago Police Department Report JF489206, at some point overnight from November 26, 2022, through November 27, 2022, VEH 082 was stolen in Chicago, Illinois.  On November 27, 2022, SHIELDS advised his associate, Lashawn Davis, that VEH 082 was for sale and provided Davis with **TCP-3** in order to communicate with TASHAWN BROWN-SMITH regarding the purchase. SHIELDS also communicated with GLENN LARSEN and other associates regarding the storage and processing of VEH 082. VEH 082 was recovered in December 2022 in Illinois.

27.      Specifically, Per Lashawn Davis's phone recovered during a traffic stop in August 2023, on November 27, 2022, at approximately 9:30 am, SHIELDS sent multiple images of VEH 082 to Davis and indicated that it was for sale for $1500.  SHIELDS also provided **TCP-3** to Davis.

28.      Per Davis's phone, on November 27, 2022, at approximately 9:45 am, BROWN-SMITH (utilizing **TCP-3**) and DAVIS discussed the purchase of VEH 082 and

the logistics regarding transferring possession.  They agreed on a price of $1,000 and a meet location of 4759 S Cicero Ave, Chicago, Illinois.

29.     Per SHIELDS's phone, on November 27, 2022, at approximately 10:05 am, SHIELDS asked a known associate, Derrick Neloms, if SHIELDS could park a Durango at Neloms's residence. SHIELDS had a further discussion with a known associate regarding the acquisition of fraudulent stickers for VEH 082.

30.     Per SHIELDS's phone, on November 27, 2022, at approximately 2:21 pm, SHIELDS texted GLENN LARSEN, utilizing **TCP-6,** "Durango drive side rear window…". LARSEN indicated that he could pick it (the window glass) up in the morning and install it the next day.  SHIELDS provided LARSEN with Derrick Neloms's address in Glenwood, Illinois.  Based on my training, experience, and knowledge gained through this investigation, I believe that SHIELDS ordered a window to replace the window that was broken during the theft of VEH 082.

31.     Per SHIELDS's phone, on November 28, 2022, at approximately 1:56 pm, LARESN, utilizing **TCP-6**, informed SHIELDS that he was "here" (at Neloms's residence). Less than an hour later, LARESN texted, "All finished."  SHIELDS said he was working on getting money situated to pay LARSEN and asked for a picture. LARSEN said he already left and that everything is in order.

12

32.     Per SHIELDS's phone, over the following days SHIELDS collaborated with a known associate to obtain a temporary Georgia permit using the fraudulent VIN for VEH 082.

33.     Per video surveillance, on December 7, 2022, a white SUV consistent with VEH 082 arrived at 5206 N Hopkins, Milwaukee, Wisconsin. On December 8, 2022, a white SUV was observed entering a garage bay at the referenced address. The investigation has identified this location as a garage utilized by SHIELDS and associates to store stolen cars and alter them for resale.

34.     Per Naperville Police Department Report 2022-013180, VEH 082 was recovered in Naperville, Illinois, on December 26, 2022.

35.     Precision location information for **TCP-3** and **TCP-6** would further corroborate evidence of the movements of TASHAWN BROWN-SMITH and GLENN LARSEN regarding their association with VEH 082, which I believe was stolen and driven from Illinois to Wisconsin before being recovered Illinois.

*VEH 706 – Black 2021 Land Rover Range Rover Sport P525 HSE*
*VIN SALWR2SE7MA794167*

36.     Per Frankfort Police Department report 23-859, on July 6, 2023, VEH 706 was stolen from Frankfort, IL. Evidence uncovered in this investigation has revealed that SHIELDS coordinated with BRIAN BELL and SHIELDS's partner, Geoffrey Harvey, to purchase VEH 706 and have it commercially shipped from Illinois to Michigan.

13

37.     Specifically, per SHIELDS's phone, on July 6, 2023, BELL (utilizing **TCP-4**) sent SHIELDS multiple images of VEH 706 and indicated the price was $7,000.  SHIELDS forwarded the images to Harvey.

38.     Per SHIELDS's phone, on July 8, 2023, SHIELDS texted BELL (utilizing **TCP-4**) and asked, "Is it still available."   Conversation continued throughout the day regarding a location to meet.  At one point BELL provided the location of Target parking lot off Mannheim (in Illinois).

39.     Per SHIELDS's phone, on July 10, 2023, SHIELDS and Harvey discussed the logistics of shipping.  SHIELDS told Harvey to provide the pick up location for shipping as 1101 W Jackson Blvd, Chicago, Illinois.

40.     Per Super Dispatch shipping records, on July 10, 2023, VEH 706 was picked up in Chicago, Illinois, and delivered to Shelby Township, Michigan, the following day.

41.     Precision location information for **TCP-4** would further corroborate the involvement of BELL in the sale of VEH 706 to SHIELDS which was shipped from Illinois to Michigan.

*VEH 412 – White 2023 Range Rover Land Rover Sport*
*VIN SAL1L9FU6PA151769*

42.     Per Chicago Police Department Report JG405439, on August 31, 2023, VEH 412 was stolen from Chicago, IL.  The approximate value of VEH 412 at the time of theft was $90,000. In August and September 2023, SHIELDS coordinated with BELL and

14

SHIELDS's partner, Geoffrey Harvey, to purchase VEH 412 and have it commercially shipped from Illinois to Michigan.

43.     Specifically, per SHIELDS's phone, on August 31, 2023, BELL (utilizing **TCP-5**) sent SHIELDS multiple images of VEH 412 and indicated the price was $12,000. SHIELDS forwarded the images to Harvey.

44.     Per SHIELDS's phone, on September 1, 2023, Harvey sent SHIELDS a text stating, "Got a offer for 20."  Harvey clarified that he was talking about the "Range." SHIELDS told Harvey that it (VEH 412) was in Chicago.

45.     Per SHIELDS's phone, on September 1, 2023, SHIELDS asked BELL (utilizing **TCP-5**) if the "Range" was still around.  SHIELDS told BELL that he had "11," which I take to mean $11,000. The conversation continued about whether the vehicle was unhooked. Based on my knowledge gained from this investigation, "unhooked" refers to whether the vehicle's tracking systems were disabled.

46.     Per SHIELDS's phone, on September 1, 2023, at approximately 7:41 pm SHIELDS and BELL (utilizing **TCP-5**) discussed a location to meet.  SHIELDS provided the address 4801 W Roosevelt Rd, Cicero, Illinois, to which BELL responded, "That's west side hot as fish grease."  Based on my training, experience, and knowledge gained from this investigation, calling an area "hot" means that there is an active law enforcement presence in the area.  Communication between SHIELDS and BELL continued indicating that SHIELDS obtained VEH 412.

15

47.     Per SHIELDS's phone, over the following day SHIELDS and Harvey discussed the logistics of shipping.  SHIELDS told Harvey to provide the pick up location for shipping as 4601 W Cermak Rd, Cicero, Illinois.

48.     Per Super Dispatch shipping records, on September 5, 2023, VEH 706 was picked up in Chicago, Illinois, and delivered to Shelby Township, Michigan, the following day.

49.     Precision location information for **TCP-5** would further corroborate the involvement of BRAIN BELL in the sale of VEH 412 to SHIELDS which was shipped from Illinois to Michigan.

*VEH 012 – Gray 2021 Dodge Ram 1500 TRX*
*Manufactured VIN 1C6SRFU98MN903300*

50.     Per Chicago Police Department report JF482119 and video surveillance, on November 17, 2022, VEH 012 was stolen from Midway Airport in Chicago, IL.  The approximate value of VEH 012 at the time of theft was $91,000. SHIELDS coordinated with GLENN LARSEN to purchase VEH 012, which was driven to Wisconsin and ultimately recovered in April 2023 in Milwaukee.

51.     Specifically, per SHIELDS's phone, on November 18, 2022, LARSEN (utilizing **TCP-6**) texted SHIELDS multiple images of a gray Dodge Ram TRX with the message, "65."  SHIELDS responded that he had "6" (which I take to mean $6,000).

52.     Per SHIELDS's phone, later on November 18, 2022, SHIELDS texted

16

LARSEN (utilizing **TCP-6**) the address 4111 N Mannehim Rd, Schiller Park, Illinois. LARSEN responded, "Got it It's showing 1hr. 3 min." At approximately 8:16 pm on the referenced date, a gray Dodge Ram with Michigan dealer plate 468D50 was captured on Illinois tollway cameras at I-294 plaza 21 in Waukegan, Illinois. The referenced plate has been used on other vehicles in the investigation by SHIELDS and associates.

53. Per location information for VEH 012, on November 18, 2022, at approximately 9:33 pm, VEH 012 was in the vicinity of 4041 N Oakland Avenue, Shorewood, Wisconsin. The location and associated parking structure is linked to a known associate of SHIELDS and has been utilized as storage for stolen vehicles. On November 22, 2022, law enforcement observed VEH 012 with Michigan dealer plate 468D50 in the underground parking structure.

54. Surveillance and law enforcement observed VEH 012 on multiple occasions from November 2022 through its recovery in April 2023 in Milwaukee, Wisconsin. Upon recovery, a fraudulent VIN was displayed as the public VIN. The manufactured VIN was discovered upon further inspection.

55. Precision location information for **TCP-6** would further corroborate the involvement of LARSEN in the sale of VEH 012 to SHIELDS which was driven from Illinois to Wisconsin after its theft.

17

## TECHNICAL BACKGROUND

56.     As further set forth in Attachment B, your affiant is requesting subscriber information and historical location data (including cell-site data) maintained by the Service Provider for the **Target Cellular Phones**, described in Attachment A.

57.     The requested data will allow investigators to compare past locations of the phone(s) associated with the account(s) and will assist in determining whether and to what extent the phone user was in geographical proximity to locations relevant to the investigation of the crimes described above.

58.     In my training and experience, I have learned that the Service Provider listed in Attachment A is a wireless provider that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be ten or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular

18

telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

59.     Based on my training and experience, I know that the Service Provider can collect cell-site data about the **Target Cellular Phones** listed in Attachment A. I also know that the Service Provider typically collects and retains cell-site data pertaining to cellular phones to which it provides service in its normal course of business in order to use this information for various business-related purposes.

60.     Based on my training and experience, I know that the Service Provider also collects more precise historical location information associated with cellular phones, which may be referred to as Per Call Measurement Data (PCMD), Range to Tower or Real-Time Tool (RTT) data, NELOS records, or Timing Advance Data (TrueCall). This data uses GPS or other technology to estimate an approximate location range of a cellular phone that is more precise than typical cell-site data.

61.     Based on my training and experience, I know that wireless providers typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or

19

received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Cellular Phones' user or users and may assist in the identification of co-conspirators and/or victims.

## CONCLUSION

62.     Based on the forgoing, I request that the Court issue the proposed search warrant. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on the Service Provider. Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

# ATTACHMENT A

## Property to Be Searched
## Matter No. 2022R00208

This warrant applies to records and information associated with the cellular devices assigned call numbers **773-587-1696** ("**Target Cell Phone 1**" or "**TCP-1**"), **708-654-9277** ("**Target Cell Phone 2**" or "**TCP-2**"), **779-240-6814** ("**Target Cell Phone 3**" or "**TCP-3**"), **847-848-7069** ("**Target Cell Phone 4**" or "**TCP-4**"), **847-282-2791** ("**Target Cell Phone 5**" or "**TCP-5**"), and **708-465-6126** ("**Target Cell Phone 6**" or "**TCP-6**"), that is in the custody or control of AT&T (the "Service Provider"), a wireless communications service provider that is headquartered at 11760 U.S. Highway 1, North Palm Beach, FL 33408.

1

<u>**ATTACHMENT B**</u>

**Particular Things to be Seized**
**Matter No. 2022R00208**

**I.    Information to be Disclosed by the Service Provider**

For the referenced time periods, the Service Provider is required to disclose the following records and other information, if available, to the United States:

- **773-587-1696 (TCP-1)**, March 27, 2023, to November 29, 2023
- **708-654-9277 (TCP-2)**, June 22, 2022, to August 11, 2022
- **779-240-6814 (TCP-3)**, August 11, 2022, to November 29, 2023
- **847-848-7069 (TCP-4)**, June 18, 2023, to July 27, 2023
- **847-282-2791 (TCP-5)**, July 27, 2023, to November 29, 2023
- **708-465-6126 (TCP-6)**, October 25, 2022, to November 29, 2023

**A.    <u>Subscriber Information and Call Detail Records:</u>**    The following information about the customers or subscribers of the account listed Attachment A:

1.    Subscriber/customer names (including user names and screen names);

2.    Subscriber/customer addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

3.    Local and long-distance call detail and tolls records for the Account;

4.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

5.    Length of service (including start date) and types of service utilized;

6.    Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity

2

Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI"));

7.   Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

8.   Means and source of payment for such service (including any credit card or bank account number) and billing records.

**B.**   **Cell-Site/Tower Records:**   All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the account listed in Attachment A, including:

1.   Records of user activity for each connection made to or from the Target Phone, including log files; text messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination Internet Protocol addresses (IPV6 data records);

2.   Information about each communication sent or received by the Target Phone, including the date and time of the communication, the method of communication, and the source and destination of the communication (such as the source and destination telephone numbers, email addresses, and IP addresses); and

3.   All data regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received;

4.   All historical GPS or other precision location information associated with the Account listed in Attachment A, including Per Call Measurement Data (PCMD), Range to Tower/Real-Time Tool (RTT) data, NELOS records, and Timing Advance Data (TrueCall)).

**The Service Provider is hereby ordered to disclose the above information to the government within FOURTEEN (14) DAYS of issuance of this warrant.**

3

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 511 (altering or removing vehicle identification numbers), 18 U.S.C. §§ 2312 and 2313 (transportation of stolen vehicles and sale or receipt of stolen vehicles), and 18 U.S.C. § 2321 (buying and selling motor vehicles with altered VINs involving into DIAUNTE D. SHIELDS (DOB: 02/18/1995), JA LEAN LITTLE (DOB: 09/18/2001), TASHAWN BROWN SMITH (DOB: 01/28/1997), BRIAN BELL (DOB: 12/06/1979), GLENN LARSEN (DOB: 02/29/1972), and/or any other known or unknown co-conspirators, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) Location information associated with the co-conspirators, call and message records associated with the co-conspirators, and records related to stolen vehicles, vehicle repair shops, VINs and titles, the transportation of vehicles, money transfers;

(b) Evidence indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crimes under investigation and to the account owner;

(c) Evidence indicating the account owner's state of mind as it relates to the crimes under investigation;

(d) The identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s); and

4

(e) The identity of the person(s) who communicated with the account user about matters relating to the crimes described herein.

This warrant authorizes a review of electronically stored information, communications, other records, and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.